**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **CASSANDRA MATTHEWS,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION 14-00601-KD-N** |
| | ) | |
| **CITY OF MOBILE,** | ) | |
| **Defendant.** | ) | |

## ORDER

This matter is before the Court on Defendant's Motion for Summary Judgment (Docs. 49-52), Plaintiff's Response (Docs. 59, 60) and Defendant's Reply (Doc. 64); Defendant's Amended Answer (Doc. 65);[1] Defendant's Motion to Strike (Doc. 63), Plaintiff's Response (Doc. 72) and Defendant's Reply (Doc. 74); Plaintiff's Res Judicata Supplement (Doc. 66) and Defendant's Res Judicata Reply (Doc. 69); Plaintiff's Motion for leave to Amend the Complaint (Doc. 67), Defendant's Opposition (Doc. 71) and Plaintiff's Reply (Doc. 73); and Plaintiff's Motion for Leave to file Surreply (Doc. 70).

## I.     Background[2]

On December 31, 2014, Plaintiff Cassandra Matthews (Matthews) initiated this action against Defendant the City of Mobile (the City).   (Doc. 1, 67-1 (as amended)).[3]   Matthews alleges in her Amended Complaint (Doc. 67-1), Title VII retaliation, hostile work environment and race discrimination (Counts I, IV, V); Section 1981 retaliation, hostile work environment

---

1 Asserting res judicata as an affirmative defense, as allowed per Order of this Court. (Doc. 61).

2 At the summary judgment stage, the facts are taken in the light most favorable to the non-movant. Tipton v. Bergrohr GMBH–Siegen, 965 F.2d 994, 998–999 (11th Cir. 1992). The "facts, as accepted at the summary judgment stage of the proceedings, may not be the actual facts of the case." Priester v. City of Riviera Beach, 208 F.3d 919, 925 n. 3 (11th Cir. 2000).

3 See infra wherein the Court allows the amended complaint.

1

and race discrimination (Counts II, V); and Section 1983 retaliation, hostile work environment and race discrimination in violation of the Equal Protection Clause of the Fourteenth Amendment (Counts III, V).[4]   (Docs. 1; 67-1 at 7-8).

On October 12, 1996, Matthews, an African American, was hired by the City as a Public Safety Dispatcher I (PSD I) in the Mobile Police Department Communications Unit (MPD). (Doc. 67-1 at 1; Doc. 51-1 (Dep. Matthews at 52-54)).   On August 10, 2002, Matthews was promoted to Public Safety Dispatcher II (PSD II).   (Doc. 51-1 (Dep. Matthews at 54)).

On October 19, 2010, Matthews took medical leave.   (Doc. 67-1 at 3).   In mid-December 2010, a first level supervisor (over dispatchers) retired, and was replaced by Sgt. Carla Shumock (Sgt. Schumock).   (Id.)   Matthews returned to work on January 4, 2011, at which time she received a written notice of disciplinary action by Sgt. Shumock, advising her that a hearing was scheduled for January 12, 2011 – eight (8) days later.   (Id. at 3-4).   The basis for the disciplinary action was an incident when Matthews was printing personal documents in the radio room.   (See CV 12-353, Doc. 87, p. 4).   The hearing was held on January 12, 2011, following which Matthews was suspended for three (3) days to be served in mid-February 2011.   (Doc. 67-1 at 4).

In March 2011, Matthews applied for a promotion to a Radio Communication Officer (RCO) vacancy, but received a low score from Sgt. Shumock following her interview, despite

---

4 Matthews asserts Title VII and Section 1981 counts in the Complaint for *both* harassment *and* hostile work environment.   Harassment and hostile work environment are one in the same.   See, e.g., Howell v. Correctional Med. Servs., 2013 WL 4654586, *3 and n.3 (S.D. Ala. Aug. 30, 2013) ("*Jones v. UPS Ground Freight*, 683 F.3d 1283 (11th Cir. 2012) ("a claim for hostile work environment is one that alleges harassment based on race[]")).   As such, while Matthews referenced and alleged "harassment" is her Complaint, she has no separate harassment claim as such is simply part of her hostile work environment claims.

what she alleges was an exemplary work history[5] and a Number #2 ranking by the Mobile County Personnel Board (MCPB).   (Id.)   Matthews alleges that Sgt. Shumock used the prior three (3) day suspension as grounds for a low rating, even though that decision was being appealed.   (Id.)

On April 18, 2011, Plaintiff received a written notice of disciplinary action, with a hearing date of May 2, 2011 -- 14 days after the notice.   (Doc. 67-1).   This disciplinary action was based on two incidents of Matthews failing to broadcast emergency information to responding police.   (See CV 12-353, Doc. 87, pp. 5-6).   The May 2, 2011 hearing was held, following which Matthews was terminated.   (Id. at 4-5).   Matthews appealed her termination to the MCPB and following a hearing before the MCPB, the termination was reduced to a suspension and on July 26, 2011 she was reinstated to her position.   (Id. at 5).   In the reinstatement ruling, the MCPB stated "there are other violations committed by other employees in this Department that appear to go unpunished."   (Id.)

On August 18, 2011, the City temporarily transferred Matthews to the Warrants Section as a result of conflicts she was experiencing with co-workers.   (Doc. 51-1 (Dep. Matthews at 104-105, 109); Doc. 52-1 (Dep. Wilson at 54-55); Doc. 51-3 (Aff. Wilson at ¶17)).   On September 29, 2011, the EEOC issued written notice of Matthews' first Charge of Discrimination to the City.   (Doc. 67-1 at 5).   In November 2011, Sgt. Shumock issued

---

5  As alleged, from 1996 to 2010, Matthews' service rating scores did not fall below "Satisfactory" and she often received a score of "Above Average" or "High Quality" (while working for approximately six (6) years as a PSD I and eight (8) years as a PSD II).   (Doc. 67-1 at 2).   Matthews received citations and awards related to her performance including Civilian Employee of the Month (April 2006, March 2004), an April 2009 Certificate of Appreciation and a Commander's Citation (March 2006) – which referenced her as a "most valuable asset," "in recognition of valuable contributions," "job well done," "hard work, professional attitude and sincerity are evident of your dedication…and exemplary of the high standards that each employee…should strive to attain."   (Id. at 2-3).   In August 2010, Matthews received a "High Quality" service rating.   (Id. at 3).

Mathews an unsatisfactory service rating allegedly based on the events surrounding the January 2011 suspension and May 2011 termination.   (Doc. 67-1 at 5).   On January 6, 2012, Matthews was reassigned/transferred to the Communications Unit in her same position as PSD II.   (Doc. 51-3 (Aff. Wilson at ¶17)).   On February 24, 2012, Matthews filed a second EEOC Charge.

On October 1, 2012 (received October 2, 2012 by the EEOC), Matthews filed a third EEOC Charge of discrimination, alleging Title VII race discrimination and retaliation, stating she was discriminated against because of her race and in retaliation for filing a previous EEOC Charge, citing a July 18, 2012 letter of reprimand (for failing to obey a supervisor's orders and failing to take proper action) and an August 2012 notation from a supervisor.   (Doc. 51-1 at 85).

On November 21, 2012, the MPD's Communications Unit received a disorderly complaint priority call, which was assigned to Matthews as the PSD II.[6]   For her role as PSD II, Matthews was responsible for receiving the information from the PSD I and dispatching information to the officers including updates.   The assigned PSD I sent the complaint screen to Matthews with an update about an assault with multiple people, possibly intoxicated, arguing in the background.   Matthews broadcasted the disorderly call and three (3) officers were dispatched to the scene.   During the course of this priority call, Matthews engaged in a 1 minute 44 second long personal telephone call on a recorded department line discussing her Thanksgiving Day dinner plans with her sister, while on duty.   (Doc. 51-1 at 96). Additionally, a few minutes later the assigned PSD I heard the complainant caller yell that the suspect had a gun and pointed the gun at the caller, and immediately updated the complaint screen with "COMP ADV SUBJ HAS A GUN POINTING AT HIM" -- a notation telling

---

6 While Mathews makes no mention of this November 21, 2012 event in her Complaint, it is the City's proffered basis for her February 1, 2013 termination and thus, is relevant to her claim.

Matthews that the subject was armed with a gun.   Matthews did not provide the responding officers with updates and so did not notify the responding officers that there was a report of an armed subject at the scene.   See also generally Doc. 51-3 (Aff. Wilson)).

Following this event, the PSD I assigned to the call notified her RCO of what transpired. On November 22, 2012, the RCO asked Matthews to prepare a narrative of what happened on the call, in which she asserts she did not receive the update (that the update light did not light up on her screen).   (Doc. 51-1 at 92-95).   In this narrative, Matthews states that she believes she is being retaliated against and harassed due to her filing of a November 12, 2012 EEOC charge against two (2) RCOs.   (Id. at 94).   The RCO investigated the incident and completed a Misconduct Report, concluding that Matthews violated General Order 26.00 Section 6.10-Neglect of Duty (Major) and recommended a General Disciplinary Hearing to determine the appropriate corrective action.

On December 5, 2012, as a result of her actions on the November 2012 priority call, the City transferred Matthews to the Traffic Unit at Police Headquarters.   (Doc. 60 at 6 (Decltn. Matthews at ¶38); Doc. 51-3 (Aff. Wilson at ¶20)).   Prior to the transfer, Matthews met with the Chief of Police.   It is in this meeting that the Chief of Police allegedly told Matthews that he was tired of her EEOC complaints.   (Doc. 51-1 (Dep. Matthews at 160-164)).   According to the City, Matthews' transfer was effected so that the City could conduct an investigation of the November 2012 priority call incident and protect the safety of its officers.   (Doc. 51-3 (Aff. Wilson at ¶20)).

On January 18, 2013, Matthews received a Pre-Disciplinary Hearing Notice.   Matthews Pre-Disciplinary proceeding (Trial Board) was held on January 24, 2013.   (Doc. 60 at 6 (Decltn.

Matthews at ¶47); Doc. 51-1 at 103).   The Trial Board deliberated and recommended that Matthews be dismissed effective February 1, 2013.   (Doc. 51-5 at 103).   Seven (7) days after Matthews' termination date, she appealed the Trial Board's decision to the MCPB.

On May 31, 2013, Matthews filed a fourth Charge of Discrimination with the EEOC alleging Title VII discrimination based on race, retaliation and retaliatory hostile work environment stemming from her February 1, 2013 termination.   (Doc. 51-1 at 75).[7]

On July 2, 2013, the MCPB affirmed the Trial Board's determination that Matthews was guilty of neglect of duty and upheld the decision to terminate her employment.   On September 16, 2013, Matthews appealed the MCPB decision (her February 2013 termination) to the Mobile County Circuit Court, *Cassandra A. Matthews v. City of Mobile, et al.*, CV-2013-000221.00. On September 15, 2015, the Circuit Court denied Matthews' appeal and affirmed her dismissal from the PSD II position because, per Judge Stewart, "it is evident that the Board's findings and conclusions are supported by substantial evidence." (Doc. 35 in CV-2013-000221.00). However, on a motion to vacate or modify, on December 1, 2015, the Circuit Court reversed its ruling and ordered that Matthews' employment be reinstated with full back-pay and benefits as "[i]t is undisputed…[she]…was not allowed to be present at the hearing in which testimony of adverse witnesses was taken [which violated her constitutional right to due process]."   (Doc. 46 in CV-2013-000221.00).   On December 8, 2015, the City appealed that ruling.   On January 7, 2016, the City moved for a stay pending resolution of the appeal, which was granted.   As of the date of this Order, that case remains on appeal.

---

7 On September 29, 2014, the EEOC responded to Matthews after investigating her Charge, concluding that the City had provided a legitimate non-discriminatory reason for its actions (her discharge) which she had failed to show were pretextual and that the information in the file "does not appear to substantiate the allegations in your charge."   (Doc. 51-1 at 104).

## II.   <u>Motion to Amend Complaint</u>

On summary judgment the parties argue race discrimination.   (Doc. 50 at 22-26; Doc. 59 at 5-7).   As conceded by Matthews, this claim was not asserted as a count in the Complaint.[8] (Doc. 66 at 1 at n.1).   However, Matthews now seeks leave of Court to amend her Complaint (Doc. 67) to add a race discrimination count (Count V) as she raised such in her May 31, 2013 EEOC Charge (Doc. 67 at 4).   (<u>Id</u>.)   The City opposes the motion and amendment.   (Doc. 71).

"At the summary judgment stage, the proper procedure for plaintiffs to assert a new claim is to amend the complaint in accordance with Fed.R.Civ.P. 15(a)." <u>Gilmour v. Gates, McDonald & Co.</u>, 382 F.3d 1312, 1315 (11th Cir. 2004).   With Matthews having so moved, "trial courts have broad discretion in permitting or refusing to grant leave to amend." <u>Garfield v. NDC Health Corp.</u>, 466 F.3d 1255, 1270 (11th Cir. 2006).   The Court finds that there is no prejudice to the City to permit the amendment as the City has already fully briefed this claim (as if already asserted in the case) on summary judgment.   <u>See</u>, <u>e.g.</u>, <u>Dunn v. Guidry</u>, 2012 WL 6216743, *2 (M.D. Ga. Dec. 13, 2012) (finding no undue prejudice in allowing plaintiff to amend the complaint on summary judgment because the defendants had addressed the claims in the summary judgment briefing).   Moreover, the grant or denial of leave to amend is within the discretion of this Court, <u>Foman v. Davis</u>, 371 U.S. 178, 182 (1962), and there is no apparent justifying reason why leave should not be granted.   As such, upon consideration, Matthews' motion for leave to amend her complaint (Doc. 67) is **GRANTED** and her proposed Amended Complaint (Doc. 67-1) is the operative complaint in this case from which the pending motion for summary judgment will be assessed.   The Clerk is **DIRECTED** to docket the proposed

---

8 Matthews only made general reference to redressing discrimination on the basis of race in the introductory statement of her original Complaint.   (Doc. 1 at 1).

7

Amended Complaint (Doc. 67-1).

## III.   Res Judicata

The City moves for summary judgment on the basis of res judicata asserting that Matthews' claims in this case are identical to the claims she previously asserted in <u>Matthews v. City of Mobile et al.</u>, CV 12-00353-KD-N (<u>Matthews I</u>) (filed on May 24, 2014 with an amended complaint filed on November 8, 2012), for which summary judgment was granted in favor of Defendants and a final judgment was issued.   (<u>See</u> attached, CV 12-00353, Doc. 87).   As set forth in <u>Polk, Sears, Roebuck, and Co</u>., 2012 WL 1640708, *3 and *5 (S.D. Ala. May 8, 2012) (internal citations omitted)):

> Res judicata is a judicially crafted doctrine, created to provide finality and conserve resources."..."The doctrine facilitates the conclusive resolution of disputes by reducing the expense and vexation attending multiple lawsuits, conserv[ing] judicial resources, and foster[ing] reliance on judicial action by minimizing the possibility of inconsistent decisions."...The black-letter rule is a simple one: "[A] final judgment on the merits bars the parties to a prior action from re-litigating a cause of action that was or could have been raised in that action."...Res judicata applies if all of the following four elements are present: "(1) there is a final judgment on the merits; (2) the decision was rendered by a court of competent jurisdiction; (3) the parties, or those in privity with them, are identical in both suits; and (4) the same cause of action is involved in both cases."...If those elements are present, "[t]he court next determines whether the claim in the new suit was or could have been raised in the prior action….

Based on a review of the Amended Complaint in this case, the Court finds that Matthews specifically reasserts, for a second time, the following allegations which she previously raised in <u>Matthews I</u>:

- She suffered an adverse employment action when she received January 4, 2011 notice of disciplinary action, a hearing was held on January 12, 2011, and she received a 3 day suspension in February 2011
- She suffered an adverse employment action when she received an April 18, 2011 notice of disciplinary action, a hearing was held on May 2, 2011, after which she was terminated. She appealed the decision and her termination was reduced to a suspension and she was then reinstated to her position

- She was denied a promotion to an RCO vacancy in March 2011

(Doc. 67-1). However, Matthews' *other* allegations in the Amended Complaint in *this* case – she was transferred to the Warrants on August 18, 2011, received a November 2011 unsatisfactory service rating, was transferred to the Traffic Unit on December 5, 2012, and was terminated on February 1, 2013 – were not specifically alleged as a basis for a claim in Matthews I.

In Matthews I, there was a final judgment on the merits rendered by a court of competent jurisdiction (this Court).   The parties in Matthews I and in this case include Matthews and the City, and became identical as Matthews and the City once the MPD was dismissed as a party in Matthews I.   In this case, Matthews asserts many of the same claims to those raised in Matthews I.   Additionally, in both cases, Matthews alleges retaliation, hostile work environment, and other adverse employment claims relating to a January 2011 disciplinary action resulting in a three (3) day suspension in February 2011, a March 2011 denial of promotion, and an April 18, 2011 disciplinary action after which she was terminated in May 2011 and appealed with her termination reduced to a suspension and then reinstatement.   As such, these allegations are barred by res judicata from being relitigated in this case per Matthews I.   (CV 12-353-KD-N, Doc. 87).

Matthews' *other* allegations in the Complaint in *this* case – that she was transferred to the Warrants section on August 18, 2011, received a November 2011 unsatisfactory service rating, was transferred to the Traffic Unit on December 5, 2012 and was terminated on February 1, 2013, were not specifically asserted as an unlawful or discriminatory basis for her claims in Matthews I (CV 12-353-KD-N).   Concerning the other 2011 allegations, *they could and should have been raised*, as they had occurred before Matthews filed both her original May 24, 2012

9

complaint and her November 8, 2012 amended complaint in <u>Matthews I</u>.   Thus, these other 2011 allegations/facts/events are barred by res judicata.   Moreover, any hostile work environment claims that are based on conduct that occurred prior to the November 2012 amended complaint, are also barred by res judicata.   And because such conduct could have been asserted in the previous lawsuit, the alleged conduct will not be allowed in this suit to support any new claims of hostile work environment.

This leaves two (2) facts/events – Matthews' December 5, 2012 transfer to the Traffic Unit and her February 1, 2013 termination.   These events had not occurred before Matthews filed either her original complaint or her amended complaint in <u>Matthews I</u>.   Additionally, with regard to her February 1, 2013 termination and related May 31, 2013 EEOC Charge of Discrimination based on same (Doc. 51-1 at 75), Matthews had not yet received her EEOC Notice of Rights to Sue.[9]   Moreover, the December 5, 2012 transfer and the February 1, 2013 are not part of the same nucleus of facts as the other 2011 facts/events because they stem from new facts tied to the November 2012 priority call.   Thus, the 2012 transfer and the 2013 termination are not barred by res judicata.

As such, the City's motion for summary judgment is **GRANTED** on res judicata grounds with regard to all claims and events <u>except</u> for discrimination claims related to the December 5, 2012 transfer to the Traffic Unit and February 1, 2013 termination, for which the motion is

---

9  While the Court acknowledges case law indicating that a previous receipt of a Notice of Rights to sue is not required for a claim to be barred by judicata, <u>Hooker v. Secretary, U .S. Dept. of Veterans Affairs</u>, 607 Fed. Appx. 918, 922 (11th Cir. 2015) and <u>O'Connor v. PCA Family Health Plan, Inc.</u>, 200 F.3d 1349, 1355-1356 (11th Cir. 2000), the Court finds that under the circumstances of this case it would be inequitable to Matthews to find that her February 1, 2013 termination is barred by res judicata.   This is because, in part, Matthews withdrew her motion to amend the complaint to add the February 1, 2013 termination in <u>Matthews I</u> so that she could wait to receive his Notice of Rights to Sue and file a separate action with regard to same (Doc. 54, CV 12-353-KD-N) -- and the Court acquiesced in this request.

**DENIED**.

**IV.**     **The December 5, 2012 Transfer to the Traffic Unit**

Matthews bases her retaliation and race discrimination claims in part on her December 5, 2012 transfer to the Traffic Unit.   To establish a prima facie case for either claim, Matthews must prove she suffered an adverse employment action.   See, e.g., CBOCS West, Inc. v. Humphries, 553 U.S. 442, 457 (2008); Bryant v. Jones, 575 F.3d 1281 (11th Cir. 2009); Goldsmith v. City of Atmore, 996 F.2d 1155, 1162-1163 (11th Cir. 1993); Yates, 2016 WL 826730, *12.   Despite her subjective beliefs, Matthews has not established that the transfer was an adverse employment action.

An "adverse employment action" requires "a serious and material change in the terms, conditions, or privileges of employment."   Webb–Edwards v. Orange Cty. Sheriff's Office, 525 F.3d 1013, 1031 (11th Cir. 2008) (internal quotation marks omitted).   The relevant inquiry is whether the employment action is "materially adverse as viewed by a reasonable person in the circumstances," regardless of the "employee's subjective view of the significant adversity." Id. A transfer can be adverse if it involves a serious and material "reduction in pay, prestige, or responsibility."   Hinson, 231 F.3d at 829.   A purely lateral transfer is not an adverse employment action.   Doe. v. Dekalb Cty. Sch. Dist., 145 F.3d 1441, 1449-1451 (11th Cir. 1998). See also e.g., Pegram v. Honeywell, Inc., 361 F.3d 272, 283-284 (5th Cir. 2004); Jones v. District of Columbia Dep't of Corr., 429 F.3d 276, 281 (D.C. Cir. 2005); Smith v. Alabama Dep't of Corr., 145 F.Supp.2d 1291, 1297-1298 (M.D. Ala. 2001).   Otherwise, "every trivial personnel action that an irritable, chip-on-the-shoulder employee did not like would form the basis of a discrimination suit."   Doe, 145 F.3d at 1449.

11

According to the City, Matthews was transferred to the Traffic Unit so the City could conduct an investigation of the November 2012 priority call incident and protect the safety of its officers.   (Doc. 51-3 (Aff. Wilson at ¶20)).   Matthews' testified that her pay and benefits remained the same with the transfer and that she did not have an issue with her shift assignment or her supervisor.   (Doc. 50 at 11 at ¶54-55; Doc. 51-1 (Dep. Matthews at 158-160, 165); Doc. 51-3 (Aff. Wilson at ¶20)).   Matthews does not dispute this on summary judgment. Matthews argues only that the transfer was involuntary and she had no experience in Traffic.   (Doc. 59 at 8).   And while Matthews testified that she believed she was transferred to the Traffic Unit as a form of discipline -- because the Police Chief told her when he transferred her that he was "sick and tired" of her EEOC complaints (Doc. 51-1 (Dep. Matthews at 160-163, 164) -- this consists of Matthews' speculation as to the reason for her transfer.   Matthews' subjective beliefs and speculation do not transform a lateral transfer into an adverse employment action.

Because an adverse employment action is an indispensable element for retaliation and race discrimination, Matthews' failure to establish same via her December 5, 2012 transfer is fatal to that portion of her claims based on the transfer.   See, e.g., Turlington v. Atlanta Gas Light Co., 135 F.3d 1428, 1432 (11th Cir. 1998) ("…summary judgment against the plaintiff is appropriate if he fails to satisfy any one of the elements of a prima facie case[]").   Thus, the only remaining claims are her race discrimination and retaliation claims based on her February 1, 2013 termination.   As such, the City's motion for summary judgment is **GRANTED** as to Matthews' race discrimination and retaliation claims premised on the December 5, 2012 transfer.

## V.   **Motion to Strike**

The City moves to strike Matthews' evidence on a number of grounds, which the Court

construes as objections.   (Doc. 63).   Pursuant to Rule 56 of the <u>Federal Rules of Civil</u>

<u>Procedure</u> motions to strike on summary judgment are not appropriate.   Per Rule 56(c)(2), "[a]

party may object that the material cited to support or dispute a fact cannot be presented in a form

that would be admissible in evidence."   The Advisory Committee Notes specify:

> Subdivision (c)(2) provides that a party may object that material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence. The objection functions much as an objection at trial, adjusted for the pretrial setting. The burden is on the proponent to show that the material is admissible as presented or to explain the admissible form that is anticipated. ***There is no need to make a separate motion to strike.*** If the case goes to trial, failure to challenge admissibility at the summary-judgment stage does not forfeit the right to challenge admissibility at trial.

Fed.R.Civ.P. 56, *Adv. Comm. Notes*, "Subdivision(c)" (2010 Amendments) (emphasis added).

As grounds for its objections, the City contends that certain portions of Mathews'

evidence (Doc. 59-2 at 1 (12/7/12 Predisciplinary Trial Board Notice), Doc. 59-3 at 1 (12/7/12

Letter), Doc. 59-4 (Wright Decltn.), Doc. 59-5 (Shoots Decltn.), Doc. 59-6 (Decltn. Warne),

Doc. 59-8 (7/7/15 Personnel Board Order for Jefferey Whittaker), Doc. 60 (Matthews Decltn.))

contain hearsay, conclusory evidence, evidence that contradicts prior sworn testimony, lack

proper authentication (Rule 901), do not constitute the best evidence (Rule 1002) and are

irrelevant/immaterial (Rule 401).   (Doc. 63).   At the outset, on summary judgment the

evidence need not be admissible, but only *be able to be reduced to admissible form* at trial.[10]

Nevertheless, the Court finds as follows with regard to the specific objections.

_____

[10] For example, courts may consider hearsay on summary judgment so long as the statement can be reduced to admissible form at trial.   <u>See</u>, <u>e.g.</u>, <u>Jones v. UPS Ground Freight,</u> 683 F.3d 1283, 1293-1294 (11th Cir. 2012) ("a district court may consider a hearsay statement in passing on a motion for summary judgment if the statement could be reduced to admissible evidence at trial or reduced to admissible form[]"); <u>Macuba v. Deboer</u>, 193 F.3d 1316, 1323 (11th Cir. 1999) (same).   Similarly, even unauthenticated or otherwise inadmissible evidence is properly considered on summary judgment so long as it can be reduced to admissible form at trial. <u>See</u>, <u>e.g.</u>, <u>Rowell v. BellSouth Corp.</u>, 433 F.3d 794, 800 (11th Cir. 2005) (on summary judgment, courts consider "evidence which can be reduced to an admissible form"); <u>Longcrier v. HL–A Co., Inc.</u>, 595 F.Supp.2d 1218, 1223 (S.D. Ala. 2008) ("The general rule in this Circuit is that parties' exhibits may be considered for purposes of pretrial rulings so long as they can be reduced to admissible form at trial[]").

Docs. 59-2 and 59-3 concern Matthews' December 2012 and January 2013 disciplinary hearing notices and a December 13, 2012 letter documenting the Anti-Discrimination Committee findings from a December 5, 2012 meeting convened to hear her complaints.   The notices do not contain substantive findings by the Trial Board, but are merely notices informing Matthews of her hearing dates.   Thus they are arguably relevant to Matthews' claims and the City's objections to Doc. 59-2 are **OVERRULED.**   The December 13, 2012 letter addresses a December 5, 2012 meeting to address Matthews' complaints and allegations and thus is relevant to Matthews' claims in this case insofar as she contends that her treatment and the City's response to same ultimately led to her February 2013 termination.   As such, the City's objections to Doc. 59-3 are **OVERRULED.**

Turning to Wright's declaration (Doc. 59-4), the Court finds that such is irrelevant as it discusses an employee not being terminated or suspended for being under the influence of medication while at work, and other employees sleeping on the job but receiving no discipline. Matthews makes no such claims (that she was asleep or medicated at work but terminated when others were not) or any discriminatory discipline claims in this case.   Likewise, regarding Doc. 59-8, such has no relevance to Matthews' case as the Personnel Board order post-dates her employment by 2½ years.   In sum, the Court has not considered this irrelevant evidence (Docs. 59-4, 59-8) on summary judgment, rendering the City's Objections **MOOT**.

Turning to Doc. 59-5 (Decltn. Shoots), Doc. 59-6 (Decltn. Warne) and Doc. 60 (Decltn. Matthews), the Court finds separately as follows.   The Shoots declaration (Doc. 59-5) cursorily references Matthews' February 2013 termination but presents only conjecture and speculation as to the reasons for same.   Additionally, portions of Shoots' declaration also discuss employees

sleeping on the job and an employee (Angela Stewart) "stacking calls" more than 2 years after Matthews was terminated, and not being disciplined. This has no relevance to Matthews' case as she was not terminated for sleeping on the job or for stacking calls and moreover, the alleged "stacking calls" incident happened after Matthews was no longer employed.   As such, the Court has not considered the declaration (Doc. 59-5), rendering the City's objections **MOOT.**   The Warne Declaration references the same employee, Angela Stewart's "stacking of calls" more than 20 months after Matthews was terminated and again, bears no relevance (factually or otherwise) to Matthews' claims.   As such, the declaration (Doc. 59-6) was not considered and the City's objections are **MOOT.**

Concerning Matthews' declaration (Doc. 60), the City suggests that it is, in part, a sham,[11] as contradicting her prior sworn deposition testimony.   The Court is not persuaded. Matthews' declaration does not *directly* contradict the deposition testimony cited, and a comparison of her deposition testimony and declaration reveals they are not clearly or inherently inconsistent.   See, e.g., Fisher v. Ciba Specialty Chem. Corp., 238 F.R.D. 273, 284 (S.D. Ala. 2006).   Thus, the "sham affidavit" rule is inapplicable.   See, e.g., King v. ADT Sec. Servs., 2007 WL 2713212, *3 (S.D. Ala. Nov 17, 2007); Kerns v. Sealy, 2007 WL 2012867, *10-11 (S.D. Ala. Jul. 6, 2007) (citing Van T. Junkins and Assoc., Inc. v. U.S. Indus., Inc., 736 F.2d 656

---

11 Under the law of this Circuit, "we may disregard an affidavit submitted solely for the purpose of opposing a motion for summary judgment when that affidavit is directly contradicted by deposition testimony." McCormick v. City of Ft. Lauderdale, 333 F.3d 1234, 1240 n. 7 (11th Cir. 2003); Fisher, 238 F.R.D. at 284 (explaining and applying "sham affidavit" rule).   Specifically, Rule 56(e) requires that a party opposing a properly supported motion for summary judgment set forth specific facts, admissible as evidence, showing the existence of a genuine issue for trial. The rule specifically allows the court to consider the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits submitted by the opposing party in determining whether a genuine issue exists.   However, "[w]hen a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact, that party cannot thereafter create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony."   Van T. Junkins, 736 F.2d at 657. To be stricken as a sham, an affidavit must be inherently inconsistent.   See, e.g., Rollins v. TechSouth, Inc., 833 F.2d 1525 (11th Cir. 1987).

(11th Cir. 1984)).   Per <u>King</u>, 2007 WL 2713212, *3 (internal citations omitted):

> …the Eleventh Circuit has recently cautioned that the sham affidavit rule "is applied sparingly because of the harsh effect it may have on a party's case." ... For that reason, and to avoid depriving the trier of fact of the opportunity to discern which witnesses are telling the truth and when, this Circuit "require [s] the court to find some inherent inconsistency between an affidavit and a deposition before disregarding the affidavit."… For any lesser variation in testimony, the proper approach is to test that inconsistency through cross-examination at trial and allow the jury to weigh it in determining the witness's credibility. There being nothing more than a possible inconsistency, and certainly much less than an inherent inconsistency…the sham affidavit rule has no application, and the Motion to Strike is denied as to this passage.

At best, the City (*arguably*) presents a "lesser variation in testimony."   Such is a matter to be tested at trial and assessed by a jury, not by the undersigned on summary judgment.   Thus, those City objections are **OVERRULED.**   As for the City's remaining objections to Matthews' declaration (e.g., conclusory allegations, speculation, conjecture, irrelevant, immaterial), the Court has only considered those portions relevant to the narrowed facts and claims before the Court, <u>see</u> *supra*, and thus, that portion of the City's objections are **MOOT.**

## VI.   <u>Conclusions of Law</u>

This summary judgment order has been needlessly complicated by a lack of clarity and shifting claims in Matthews' complaint and subsequent filings.   The Court has now discerned that there are only three (3) claims to be addressed on the merits: 1) a claim for race discrimination based on the February 1, 2013 termination; 2) a claim for retaliation based on the February 1, 2013 termination; and 3) a claim for hostile work environment between November 2012 and February 1, 2013.

## A.   <u>Standard of Review</u>

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."   FED.

R. Civ. P. 56(a).    Rule 56(c) provides as follows:

> **(1) Supporting Factual Positions.** A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> > **(A)** citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> >
> > **(B)** showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.
>
> **(2) Objection That a Fact Is Not Supported by Admissible Evidence.** A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.
>
> **(3) Materials Not Cited.** The court need consider only the cited materials, but it may consider other materials in the record.
>
> **(4) Affidavits or Declarations.** An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

Fed.R.Civ.P. Rule 56(c).

Defendant, as the party seeking summary judgment bears the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).    If the nonmovant fails to make "a sufficient showing on an essential element of her case with respect to which she has the burden of proof," the movant is entitled to summary judgment.    Celotex, 477 U.S. at 323.    In assessing whether the nonmovant has met its burden, "the court must stop short of weighing the evidence and making credibility

determinations of the truth of the matter….Instead, '[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor.'" Tipton v. Bergrohr GMBH-Siegen, 965 F.2d 999 (11th Cir. 1992).

**B.    Discussion**

At the outset, when a plaintiff seeks vindication of rights secured by Section 1981 against a state actor (as Matthews does against the City), Section 1983 is the exclusive remedy. Butts v. Cnty. of Volusia, 222 F.3d 891, 893 (11th Cir. 2000) (citing Jett v. Dallas Indep. Sch. Dist., 491 U.S. 701, 731-732 (1989)). The Court thus merges Matthews' Section 1981 counts for retaliation, hostile work environment and race discrimination into her Section 1983 counts for retaliation, hostile work environment and race discrimination (Counts III and V), **DISMISSING** the Section 1981 portions of Counts II and V. Jett, 491 U.S. at 733 (Section 1983 "provides the exclusive federal damages remedy for the violation of the rights guaranteed by § 1981 when the claim is pressed against a state actor[]"); McMillan v. Fulton Cty., Ga., 352 Fed. Appx. 329, 330, n. 1 (11th Cir. 2009) (there is no liability under section 1981 in cases involving state actors as such claims merge into Section 1983).

Additionally, while Section 1983 provides a cause of action for retaliation, Bennett v. Hendrix, 423 F.3d 1247 (11th Cir. 2005), a Section 1983 retaliation claim cannot be brought under the equal protection clause. Watkins v. Bowden, 105 F.3d 1344, 1354-1355 (11th Cir. 1997) ("[a] pure or generic retaliation claim...simply does not implicate the Equal Protection Clause[]"); Jolivette v. Arrowood, 180 Fed. Appx. 883, 887 (11th Cir. 2006) ("no clearly established right exists under the equal protection clause to be free from retaliation"). "The right to be free from retaliation is clearly established as a first amendment right and as a statutory

18

right under Title VII; but no clearly established right exists under the equal protection clause to be free from retaliation."   Ratliff v. DeKalb Cty., Ga., 62 F.3d 338, 340 (11th Cir. 1995). Matthews' Complaint specifically references the "Fourteenth Amendment" and "equal protection," alleging Section 1983 retaliation in Count III.   (Doc. 1 at 7 at ¶41).   The First Amendment is not mentioned by Matthews.   Thus, Matthews' Section 1983 equal protection retaliation claim in Count III is **DISMISSED** and her Section 1983 claims are limited to hostile work environment and race discrimination (Counts III and V).   See, e.g., Betts v. Conecuh Cty. Bd. of Ed., 2014 WL 7411670, *7 (S.D. Ala. Dec. 30, 2014) (dismissing equal protection claims under Section 1983 on similar grounds).

Moreover, when "a plaintiff's claims under Title VII are based on the same set of facts as his claims under § 1983, the analysis under Title VII is identical to the analysis under § 1983….the same elements for discrimination and retaliation under [Plaintiff's] Title VII claims apply to [Plaintiff's] § 1983 claims."   King v. Butts Cty., 576 Fed. Appx. 923, 931 (11th Cir. 2014).   As such, Matthews' Title VII and Section 1983 claims will be analyzed together.

1.   **Retaliation**[12]

Matthews asserts that the City retaliated against her by terminating her on February 1, 2013.   Title VII prohibits retaliation by an employer against one who has engaged in statutorily protected conduct.   Clover v. Total Sys. Servs., Inc., 176 F.3d 1346, 1350 (11th Cir. 1999); 42 U.S.C. § 2000e-3(a).   Statutorily protected conduct includes opposition to "any practice made unlawful by [Title VII][,]" Clover, 176 F.3d at 1350, specifically prohibiting discrimination because an employee "opposed any practice made an unlawful employment practice by [Title VII], or because he has made a charge, testified, assisted, or participated in any manner in an

---

12  Encompassing Matthews' Title VII, Section 1981 and Section 1983 retaliation claims.

investigation, proceeding, or hearing under [Title VII]."

Matthews has not offered direct evidence of retaliation.   Where, as here, a plaintiff relies on circumstantial evidence for a Title VII retaliation claim, courts apply the burden shifting approach articulated in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973). Under <u>McDonnell Douglas</u>, plaintiff has the initial burden to establish a prima facie case of discrimination, which creates a presumption that the employer discriminated against the plaintiff. <u>Id</u>. If the plaintiff establishes a prima facie case, the burden of production shifts to the employer to provide a legitimate, nondiscriminatory reason for the action taken, which rebuts the presumption of discrimination. <u>Id</u>. The plaintiff is then afforded an opportunity to show that the employer's stated reason is a pretext for discrimination. <u>Id</u>.

To establish a prima facie case of retaliation a plaintiff must prove that: 1) she engaged in a statutorily protected activity; 2) she suffered a materially adverse employment action; and 3) a causal link exists between the two.   <u>See</u>, <u>e.g.</u>, <u>Bryant</u>, 575 F.3d 1281; <u>Goldsmith</u>, 996 F.2d at 1162-1163; <u>CBOCS West</u>, 553 U.S. at 457.   Additionally, as explained in <u>Yates</u>, 2016 WL 826730, *12 (internal citations omitted):

> ….an "adverse employment action" in the retaliation context does not carry the restrictive definition that it does in the discrimination setting….the test is whether "a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination."…"the significance of any given act of retaliation will often depend upon the particular circumstances. Context matters."..."The anti-retaliation provision [of Title VII] protects an individual not from all retaliation, but from retaliation that produces an injury or harm."...The Supreme Court has stated that "material adversity" is distinguishable from mere "trivial harms."…..

If Matthews establishes her prima facie case, the burden of production shifts to the City to rebut the presumption by articulating a legitimate, nondiscriminatory reason for the adverse

employment action.   Perkins v. Kushla Water Dist., 21 F.Supp.3d 1250, 1266 (S.D. Ala. 2014);
Smith v. City of Ft. Pierce, Fla., 565 Fed. Appx. at 776-777; Bryant, 575 F.3d at 1308.   If the
City carries this burden, the burden shifts back to Matthews to demonstrate that the City's
proffered legitimate reasons for taking the adverse action were a pretext for retaliation and that
her protected activity was the "but-for" cause of the adverse action.   Mealing v. Georgia Dept.
of Juvenile Justice, 564 Fed. Appx. 421, 427 (11th Cir. 2014).

A plaintiff may rely on evidence previously submitted as part of her prima facie case.
Chapman v. AI Transp., 229 F.3d 1012, 1024 (11th Cir. 2000).   Additionally, an employer's
reasons may be shown to be pretextual "by revealing such weaknesses, implausibilities,
inconsistencies, incoherencies or contradictions in [its] proffered legitimate reasons for its
actions that a reasonable factfinder could find them unworthy of credence." Springer v.
Convergys Customer Mgmt. Grp., 509 F.3d 1344, 1348 (11th Cir. 2007) (quotation omitted).
However, a reason cannot be a "pretext for discrimination unless it is shown both that the reason
was false, and that discrimination was the real reason." St. Mary's Honor Ctr. v. Hicks, 509
U.S. 502, 515 (1993) (quotation omitted).   If the reason is one that might motivate a reasonable
employer, a plaintiff cannot merely recast the reason, but must "meet that reason head on and
rebut it[]" Chapman, 229 F.3d at 1030, showing pretext with "concrete evidence in the form of
specific facts[]" Bryant, 575 F.3d at 1308.   "Conclusory allegations and assertions" will not
suffice.   Id.   That an employer's decision was subjective, or that it was based on an unwritten
or informal policy subject to differing interpretations, without more, does not show that it was
pretextual.   Conner v. Fort Gordon Bus Co., 761 F.2d 1495, 1501 (11th Cir. 1985).   And
"[w]hen a plaintiff chooses to attack the veracity of the employer's proffered reason, '[the]

21

inquiry is limited to whether the employer gave an honest explanation of its behavior.'" <u>Kragor</u> <u>v. Takeda Pharm. Am., Inc.</u>, 702 F.3d 1304, 1310-1311 (11th Cir. 2012).

Further, in <u>Sims v. MVM, Inc.</u>, 704 F.3d 1327, 1332–1333 (11th Cir. 2013), the Eleventh Circuit clarified that the <u>McDonnell Douglas</u> framework is not the sine qua non for a plaintiff to survive summary judgment.   <u>See</u> <u>also</u> <u>Smith v. Lockheed-Martin Corp.</u>, 644 F.3d 1321, 1328 (11th Cir. 2011). "The plaintiff will always survive summary judgment if he presents circumstantial evidence that creates a triable issue concerning the employer's discriminatory intent." <u>Id</u>. A triable issue of fact exists if the record, viewed in a light most favorable to the plaintiff, presents a "convincing mosaic" of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker. <u>Id</u>. <u>See</u> <u>generally</u> <u>Hamilton v. Southland</u> <u>Christian School, Inc.</u>, 680 F.3d 1316, 1320 (11th Cir. 2012).

As to the first element, regarding the specific protected activity related to her February 1, 2013 termination, Matthews asserts as follows:

> ….she filed several EEOC complaint[s]…and had just received a Notice of Rights regarding one such complaint on November 20, 2012….A notice of pre-disciplinary hearing dated December 13, 2012, was sent out to Matthews, setting her pre-disciplinary hearing for December 17, 2012… due to a pre-schedule[d] vacation, the notice was cancel[ed] and re-issued on January 18, 2013, setting the hearing for January 24, 2013…on January 29, she was notified of her termination effective February 1, 2013….

(Doc. 59 at 8).   Matthews bases her retaliation claim on her October 2, 2012 EEOC Charge (Doc. 51-1 at 85), citing that charge as the protected conduct.   Matthews also suggests (though not included in her complaint) that her retaliation claim stems from December 2012 complaints against supervisors for racial harassment that she made to an Anti-Discrimination Committee. (<u>See</u>, Doc. 59-3). The City has not disputed that such constitutes statutorily protected conduct.

The Filing of an EEOC Charge is a statutorily protected activity.   <u>Smith v. City of Fort</u>

22

Pierce, Fla., 565 Fed. Appx. 774, 776-777 (11th Cir. 2014).   See also Walton-Horton v. Hyundai of Ala., 402 Fed. Appx. 405, 408 (11th Cir. 2010) ("Statutorily protected expression includes…complaints lodged with the Equal Employment Opportunity Commission…"); Tarmas v. Secretary of Navy, 433 Fed. Appx. 754, 762 (11th Cir. 2011) ("[t]here is no dispute that the filing of a claim with the EEOC is a 'statutorily protected activity[]'").   Likewise, an employee's voicing of complaints of discrimination to her supervisors and/or communicating the belief that discrimination is occurring to her employer (such as Mathews did related to the December 2012 Anti-Discrimination Committee meeting), constitutes statutorily protected activity.   Perkins v. Lynch, 2016 WL 837717, *4 (N.D. Ala. Mar. 4, 2016).   See also Harney v. McCatur, Inc., 2012 WL 2479630, *9 (N.D. Ala. Jun. 26, 2012); Total Sys. Servs., 221 F.3d at 1174-1175.   As such, Matthews has satisfied the first element of her claim.

Second, Matthews' February 1, 2013 termination was an adverse employment action and the parties do not dispute this.   See, e.g., Hurlbert v. St. Mary's Health Care Sys., Inc., 439 F.3d 1286, 1298 (11th Cir. 2006); Whitt v. Baldwin Cty. Mental Health Ctr., 2013 WL 6511856, *18 (S.D. Ala. Dec. 12, 2013) ("[t]ermination is of course an adverse employment action[]").

Third, the Court turns to whether Matthews has sufficiently shown that the protected activity of her filing the October 2, 2012 EEOC Charge and complaining of discrimination resulting in the December 5, 2012 Anti-Discrimination Committee meeting *caused* the specific adverse employment action – the February 1, 2013 termination.   As for the October 2, 2012 EEOC Charge, approximately four (4) months passed between the EEOC Charge and her termination.   The Eleventh Circuit has held that a four (4) month gap between the protected conduct and adverse employment action is insufficient to establish causation on its own.   See,

23

e.g., Adams v. City of Montg., 569 Fed. Appx. 769, 774 (11th Cir. 2014) ("absent other evidence of causation, the temporal proximity must be very close[]"); Walker v. Secretary, U.S. Dept of Air Force, 518 Fed. Appx. 626, 628 (11th Cir. 2013).   Likewise, concerning the December 5, 2012 Anti-Discrimination Committee meeting and her allegations at that time, approximately two (2) months passed between the alleged statutorily protected activity and her termination. The Eleventh Circuit has held that a two (2) month gap between the protected conduct and adverse employment action is insufficient to establish causation on its own. Williams v. Waste Mgt., Inc., 411 Fed. Appx. 226, 229 (11th Cir. 2011) (a two-month gap between the protected activity and the alleged adverse action is not close enough in time to establish a prima facie claim for retaliation).   However, Matthews does not rely solely upon temporal proximity.   She has also submitted evidence that the Chief of Police told her at the December meeting regarding her transfer, that he was tired of her EEOC Complaints.   Accordingly, the Court finds that Matthews has provided sufficient evidence of a causal connection to establish a prima facie case of retaliation.

However, the City has articulated a legitimate, non-retaliatory reason for her termination. Specifically, the City contends that she engaged in prohibited conduct and neglected her duties by failing to notice an update concerning an armed suspect and conducting a personal call during the course of a November 2012 priority call: "Plaintiff's termination was a direct result of her inability to perform the essential functions of a PSD, including but not limited to causing a dangerous situation for City police officers and citizens by participating in a personal phone call during a priority call involving an armed suspect."   (Doc. 64 at 3 and note 2).   See also supra Section I.

In reply, Matthews fails to offer sufficient evidence to support a finding that the City's reason for her termination was pretextual, or that the City decision makers did not believe that she engaged in the charged conduct.   Instead, Matthews merely quarrels with the City's business decision and with the events that occurred during the November 2012 priority call (claiming her update light did not turn on and them blaming her supervisors for failing to have a backup in place).   (Doc. 59 at 9-10).   Employers are free to fire their employees for "a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason."   Nix v. WLCY Radio/Rahall Comm., 738 F.2d 1181, 1187 (11th Cir. 1984) (emphasis added).   As such, even if the City's conclusion that Matthews was at fault for how she handled the November 2012 priority call (that she neglected her duty) is erroneous, such does not help Matthews' case or create pretext.   To establish pretext, Matthews must show that the City *knew* she was wrongly accused of mishandling the priority call/neglect of duty and *that the real reason she was terminated was in retaliation for engaging in protected activity.*   This, Matthews has failed to do.

Matthews also contends that her past disciplinary record was improperly considered by the City in reaching the decision to terminate her because the City violated her procedural due process rights while conducting the prior disciplinary actions.   (Doc. 59 at 10-14). Mathews' argument lacks merit.   There is no requirement that conduct results in a formal disciplinary action in order for the conduct to the be basis of a legitimate, non-retaliatory reason for termination.   Moreover, the City based its termination decision in great part on her mishandling of the November 2012 priority call.   In sum, there is insufficient evidence before the Court indicating that the City's reasons for terminating Matthews were based on her protected activity.

Thus, Matthews has failed to rebut the City's legitimate non-retaliatory reasons for her February 1, 2013 termination and the City's motion for summary judgment on Matthews' retaliation claim based on her February 1, 2013 termination is **GRANTED.**

**2.      Race discrimination: Discriminatory Termination**[13]

Matthews alleges race discrimination with regard to her February 1, 2013 termination (i.e., discriminatory termination).[14]   Matthews may support her claims with direct evidence, circumstantial evidence, or statistical proof.   Rioux v. City of Atlanta, Ga. 520 F.3d 1269, 1274 (11th Cir. 2008).[15]   There is no allegation or submission of direct evidence or statistical proof by Matthews.   Thus, Matthews' claim of race discrimination is based on circumstantial evidence.

Where there is only circumstantial evidence, courts apply the framework in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).   See, e.g., Chapman v. AI Transp., 229 F.3d 1012, 1024 (11th Cir. 2000).   Under McDonnell Douglas, the plaintiff has the initial burden of establishing a prima facie case of race discrimination.   Id.   To establish a prima facie case of discriminatory termination, Matthews must show she was: 1) a member of a protected class; 2) qualified for her current position; 3) suffered an adverse employment action; and 4) replaced by someone outside her protected class or was treated less favorably than an individual outside of her protected class.   Maynard v. Board of Regents of the Divs. of Univs. of Fla. Dept. of Ed., 342 F.3d 1281, 1289 (11th Cir. 2003); Hinson v. Clinch Cty., Ga. Bd. of Ed., 231 F.3d 821, 828

---

13  Encompassing Matthews' Title VII, Section 1983 and Section 1981 race discrimination claims.

14  Matthews does not argue mixed motive, see, e.g., Quigg v. Thomas Cty. School Dist., 814 F.3d 1227 (11th Cir. 2016), and there is no evidence to support such as to her race discrimination claim.

15  Direct evidence is "evidence which reflects a discriminatory or retaliatory attitude correlating to the discrimination or retaliation complained of by the employee."   Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1086 (11th Cir. 2004). See, e.g., Scott v. Suncoast Beverage Sales, Ltd., 295 F.3d 1223, 1227-1228 (11th Cir. 2002); Taylor v. Runyon, 175 F.3d 861, 867 (11th Cir. 1999); Jones v. Bessemer Carraway Med. Ctr., 151 F.3d 1321, 1323 n. 11 (11th Cir. 1998); Burrell v. Board of Trustees of Ga. Military College, 125 F.3d 1390, 1393 (11th Cir. 1997).

(11th Cir. 2000); Ezell v. Darr, 951 F.Supp.2d 1316, 1334 (M.D. Ga. 2013).   However, the McDonnell Douglas framework is not the *sine qua non* for a plaintiff to survive summary judgment. Smith, 644 F.3d at 1328; Sims, 704 F.3d at 1332-1333.   A plaintiff survives if she presents circumstantial evidence that creates a triable issue as to the employer's discriminatory intent, and a triable issue of fact exists if the record, viewed in a light most favorable to the plaintiff, presents a "convincing mosaic" of circumstantial evidence allowing a jury to infer intentional discrimination by the decisionmaker.   Id.; Hamilton, 680 F.3d at 1320.

Matthews alleges that her February 1, 2013 termination was racially motivated.   As to the first element, there is no dispute Matthews is a member of a protected class, African American.   Second, termination is an adverse employment action.   Hurlbert, 439 F.3d at 1298; Whitt, 2013 WL 6511856, *18.   Third, however, the City disputes that Matthews is qualified for her position (Doc. 64 at 3 at note 2).   Nevertheless, even when viewing the facts in the light most favorable to her *(and assuming Matthews is qualified for her position for purposes of summary judgment),* she has still failed to satisfy the fourth element, that she was replaced by a similarly situated person outside of her protected class or was treated less favorably than an individual outside of her protected class (who engaged in the same conduct but was not terminated).

Specifically, Matthews asserts that co-workers Shoots, Warne and Wright have attested, via Declarations, to the existence of other employees outside of Matthews' protected class who "have been distracted or inattentive to their responsibilities as dispatcher because they were repeated[ly] asleep on the job, and one under the influence of drugs on multiple occasions[,]" but who have not been terminated.   (Doc. 59 at 1).   Matthews contends that Shoots' and Wright's

declarations also attest that certain employees sleep on the job regularly, with full knowledge of the supervising RCOs, with being subject to discipline, and one dispatcher repeatedly reports to work under the influence of medication.   (Id. at 5-6).   As stated *supra* with regard to the City's motion to strike, these declarations are irrelevant and have not been considered on summary judgment as they deal with entirely different circumstances and different conduct/misconduct – i.e., not a priority call.   None are accused of failing to update an officer about an armed suspect while on a personal call during a priority call at work but not being terminated by the City.

At best, Matthews contends that Shoots' and Warne's declarations provide information about employee call-taker Angela Stewart, who "stacked" her calls instead of forwarding them for transmission to the field with one call involving a burglary in progress – i.e., suggesting that Stewart had neglect of duty violations for calls but suffered no discipline for same much less termination.   (Doc. 59 at 5).   From this, Matthews contends that she has satisfied the fourth element – persons outside her class who were not terminated after engaging in neglect of duty conduct/violations.   However, to satisfy the comparator aspect of the fourth element, Matthews must show that someone engaged in the same conduct as she, yet was not terminated.   This, she has failed to do.   Matthews even testified that she knows of _no_ other PSD employees (employees in her position) who engaged in the same conduct as she concerning the November 2012 priority call:

> Q. Let me ask this question…Do you know of any PSD who was charged with neglect of duty after having -- after failing to update an officer that there was a potential weapon and was on a personal call at the same time?
>
> A. No.

(Doc. 51-1 at 66 (Dep. Matthews at 255)).

Specifically, Matthews must show someone who is nearly identical in all respects to her. Grider v. City of Auburn, Ala., 618 F.3d 1240, 1264 (11th Cir. 2010) ("[t]o be similarly situated, the comparators must be prima facie identical in all relevant aspects[]"); Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1091 (11th Cir. 2004) (a comparator "must be similarly situated in all relevant respects[]").   See also e.g., Drake–Sims v. Burlington Coat Factory Warehouse of Ala., Inc., 330 Fed. Appx. 795, 803 (11th Cir. 2009).   It is necessary that a comparator must be "nearly identical" to the plaintiff "to prevent courts from second-guessing a reasonable decision by the employer."   Wilson, 376 F.3d at 1091.   See also e.g., Head v. Pitts Enterp, Inc., 2010 WL 2773376, *13 (M.D. Ala. Jul. 14, 2010); Drake–Sims, 380 Fed. Appx. at 803; Sylva–Kalonji v. Board of School Comm'rs of Mobile Cty., 2009 WL 1418808, *5–6 (S.D. Ala. May 20, 2009); Hill v. Emory Univ., 346 Fed. Appx. 390, 395 (11th Cir. 2009); Beard v. 84 Lumber Co., 206 Fed. Appx. 852, 857 (11th Cir. 2006). Where there are allegations of discriminatory discipline, establishing the fourth element "requires showing a similarly situated employee, who was engaged in the same or similar misconduct but did not receive similar discipline." Archie v. Frank Cockrell Body Shop, Inc., 581 Fed. Appx. 795, 798 (11th Cir. 2014) (citation omitted). The "quantity and quality of the comparator's misconduct" must be 'nearly identical' to prevent judges from second-guessing employers' reasonable decisions." Id. See also Davis v. Houston County, Al. Bd. of Educ., 291 Fed. Appx. 251, 252, (11th Cir. 2008) (same).   Additionally, as explained in Brown v. Mobile Cty. Com'rs, 79 F. Supp.2d 1259, 1274 (S.D. Ala. 2015):

> ….And in conducting the comparator analysis, this Court must remain mindful that anti-discrimination law "does not take away an employer's right to interpret its rules as it chooses, and to make determinations as it sees fit under those rules." *Silvera v. Orange County Sch. Bd.,* 244 F.3d 1253, 1259 (11th Cir.2001) (internal quotations omitted). For this reason, the employer's perception as to the severity of the employee's conduct is relevant in determining whether the employee and the comparator are similarly situated

in all relevant respects. *See Nix v. WLCY Radio/Rahall Comm.,* 738 F.2d 1181, 1186 (11th Cir.1984) (explaining if an employer applies a rule differently to people it believes are differently situated, no discriminatory intent has been shown)…..

See also Knight v. Fourteen D Enter., Inc., 995 F. Supp.2d 1311, 1325-1330 (S.D. Ala. 2014).

Further, even without a comparator, Matthews "other evidence" does not amount to the type of "convincing mosaic of circumstantial evidence" per Smith *supra*, that would allow a jury to infer intentional discrimination. Instead, said evidence is essentially based on Matthews' personal beliefs/opinions, conjecture and speculation.

Finally, even assuming arguendo that Matthews could establish a prima facie case, the City has proffered a legitimate non-discriminatory reason for her February 1, 2013 termination which Matthews has failed to show is pretextual. Matthews has offered no evidence that the proffered reason is false, or that it was racially motivated. Moreover, "[a] plaintiff is not allowed to recast an employer's proffered nondiscriminatory reasons or substitute his business judgment for that of the employer. Provided that the proffered reason is one that might motivate a reasonable employer, an employee must meet that reason head on and rebut it, and the employee cannot succeed by simply quarreling with the wisdom of that reason." Chapman, 229 F.3d at 1030. Matthews' argument concerning pretext simply quarrels with her employer's decision, failing to meet the proffered reason head on and rebut same. The Court will not second-guess the City's judgment that Matthews' misconduct warranted termination, nor will it question the City's disciplinary decisions as to other employees not engaged in the same conduct, for an "employer may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason." Nix, 738 F.2d at 1187.

Upon consideration, "in a disparate treatment case, the plaintiff bears the ultimate burden of proving that the employment action at issue was taken because of the plaintiff's [protected characteristic]." EEOC v. Joe's Stone Crab, Inc., 220 F.3d 1263, 1273–1274 (11th Cir. 2000). Put simply, Matthews has failed to satisfy this burden by producing sufficient evidence indicating that her termination was due to her race.   As such, the City's motion for summary judgment as to Matthews' race discrimination claim (discriminatory termination) based on her February 1, 2013 termination is **GRANTED.**

**3.    Hostile Work Environment**[16]

As to Counts II, III and IV of the Amended Complaint, asserting a hostile work environment claim, the pre-December 2012 conduct relied upon is barred by res judicata and will not be considered.   Thus, the only hostile actions that Matthews has described are her December 2012 transfer and the February 2013 termination.   As these actions were neither improper nor discriminatory (see supra) they are insufficient to establish a hostile work environment claim.   Accordingly, the City's summary judgment is **GRANTED** on this claim.

**VII.    Conclusion**

Accordingly, it is **ORDERED** that the City's Motion for Summary Judgment (Docs. 49-52) is **GRANTED in part** and **DENIED in part** as follows: **GRANTED in part** and **DENIED in part** on res judicata grounds as set forth herein, and **GRANTED** as to Matthews' retaliation, race discrimination and hostile work environment claims.   It is further **ORDERED** that Matthews' motion for leave to amend the complaint is **GRANTED**; the City's motion to strike is **SUSTAINED in part, OVERRULED in part** and **MOOT in part** as detailed *supra*; and Plaintiff's motion for leave to file a surreply is **DENIED.**

---

16  Encompassing Matthews' Title VII, Section 1983 and Section 1981 hostile work environment claims.

A Final Judgment consistent with the terms of this Order shall be entered by separate document as required by Rule 58 of the <u>Federal Rules of Civil Procedure</u>.

**DONE** and **ORDERED** this **2nd** day of **May 2016.**

<u>/s/ Kristi K. DuBose</u>
**KRISTI K. DuBOSE**
**UNITED STATES DISTRICT JUDGE**
